```
 1 | THOMAS P. O'BRIEN
   | United States Attorney
 2 | CHRISTINE C. EWELL
   | Assistant United States Attorney
 3 | Chief, Criminal Division
   | JENNIFER A. CORBET (SBN 208241)
 4 | KEVIN S. ROSENBERG (SBN 174593)
   | Assistant United States Attorneys
 5 | OCDETF Section
   |      1400 United States Courthouse
 6 |      312 North Spring Street
   |      Los Angeles, California 90012
 7 |      Telephone: (213) 894-3752/4849
   |      Facsimile: (213) 894-0142
 8 |
   | Attorneys for Plaintiff
 9 | UNITED STATES OF AMERICA
10 |              UNITED STATES DISTRICT COURT
11 |          FOR THE CENTRAL DISTRICT OF CALIFORNIA
12 | UNITED STATES OF AMERICA,  ) No. CR 03-687-RGK
   |                            ) No. CR 03-689-RGK
13 |           Plaintiff,       )
   |                            ) GOVERNMENT'S SENTENCING POSITION
14 |           v.               ) RE: RESENTENCING OF DEFENDANT JUAN
   |                            ) EMANUEL LOCOCO
15 | JUAN EMANUEL LOCOCO,       )
   |                            )
16 |           Defendant.       ) Hearing Date: 11/3/08
   |                            )
17 | _____)
```

18   Plaintiff, by and through its attorney of record, the United
19 States Attorney for the Central District of California,
20 hereby files its Sentencing Position regarding the resentencing
21 of defendant Juan Emanuel Lococo following the Ninth Circuit's
22 remand.  The government's objections and position regarding
23 sentencing are based on the attached memorandum with exhibits,
24 \\
25 \\
26 \\
27 \\
28 \\

1  the records and files of this case, and any argument that the
2  Court may permit at the sentencing hearing.
3  Dated: September 22, 2008        Respectfully submitted,
4                                   THOMAS P. O'BRIEN
                                    United States Attorney
5
                                    CHRISTINE C. EWELL
6                                   Assistant United States Attorney
                                    Chief, Criminal Division
7
8                                   _____/s/_____
                                    JENNIFER A. CORBET
9                                   KEVIN S. ROSENBERG
                                    Assistant United States Attorneys
10
                                    Attorneys for Plaintiff
11                                  United States of America

**GOVERNMENT'S POSITION RE: RESENTENCING FOLLOWING REMAND**

I. INTRODUCTION

After this Court sentenced defendant Juan Emanuel Lococo in two related cases, Lococo appealed the conviction and sentence on a number of grounds. The Ninth Circuit agreed with defendant Lococo that the Court committed an Apprendi[1] error when it sentenced defendant based on its finding of the amount of crack cocaine involved in the conspiracy. United States v. Lococo, 514 F.3d 860, 865 (9th Cir. 2008). Therefore, the Ninth Circuit vacated defendant's sentence and remanded for resentencing. Defendant's appeal was denied in all other respects, including his claim that the Court's sentence was unreasonable.

The Ninth Circuit instructed that "On remand, the district court may only base a section 841(b)(1)(B) enhancement on the quantity of powder cocaine involved in the conspiracy." 514 F.3d at 865. In anticipation of defendant's resentencing, the government asks the Court, based on the evidence in this case, to find beyond a reasonable doubt that, with respect to case CR 03-689,[2] defendant knowingly conspired to distribute or possess with intent to distribute more than 500 grams of a mixture or substance containing a detectable amount of powder cocaine.

---

[1] Apprendi v. New Jersey, 530 U.S. 466 (2000), requires that any fact, other than a prior conviction, which increases the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. In this case, defendant waived his right to jury determination of drug quantity. See 514 F.3d at 865.

[2] Because the indictment in case CR 03-687 did not implicate a heightened statutory maximum based on powder cocaine, the section 841(b)(1)(B) enhancement for powder cocaine is based only on the indictment in CR 03-689. Accordingly, this memorandum discusses only the CR 03-689 case.

## II. SUMMARY OF FACTUAL BACKGROUND FOR CR 03-689

Defendant Lococo was a member of a conspiracy that engaged in trafficking of powder cocaine and crack cocaine. In this conspiracy, John Edwards instructed Charlotte Jackson to buy powder cocaine. Jackson purchased powder cocaine from defendant and delivered it to Edwards. Edwards then manufactured crack cocaine from the powder cocaine. Edwards gave the crack cocaine to Jackson, who provided it to members of the Blood Stone Villains street gang so that they could make street sales. This conspiracy began on a date unknown and continued until June 26, 2003, when defendants were arrested. At the time of his arrest, defendant possessed distribution quantities of powder cocaine and crack cocaine.

## III. SUMMARY OF PROCEDURAL BACKGROUND

Count One of the indictment in CR 03-689 charged Lococo, Jackson, Edwards, and six other individuals with conspiracy to posses with intent to distribute, and to distribute, more than 500 grams of cocaine and more than 50 grams of cocaine base, in violation of 21 U.S.C. § 846. (CR[3] 57.) An additional count (Count Eleven) charged Lococo with possession of more than five kilograms of cocaine. (Id.)

On August 25, 2004, following the government's opening statement at trial, defendant entered a conditional guilty plea pursuant to a written plea agreement. (CR 299, 308.) On July 7, 2005, the district court sentenced Lococo to 262 months

---

[3] "CR" refers to the Clerk's Record in case CR 03-689 and is followed by the docket control number.

imprisonment and five years supervised release for Count One in case CR 03-689 (to be served concurrently with the sentence in CR 03-687), and a $200 special assessment. (CR 399.)

IV. <u>FACTS RELEVANT TO RESENTENCING</u>

In the plea agreement, defendant admitted the following acts in furtherance of the CR 03-689 drug conspiracy:

    1. On October 30, 2002, defendant supplied Jackson with crack cocaine and powder cocaine.

    2. On November 10, 2002, defendant agreed to sell Jackson powder cocaine for a price of $14,500.

    3. On June 26, 2003, defendant possessed cocaine powder at his distribution location.

(CR 299 at page 17.) Defendant confirmed these admissions at the change of plea hearing. Defendant did not dispute that he sold and possessed powder cocaine, however, he disputed that he knew that the powder cocaine he supplied to Jackson was going to be turned into crack cocaine.

Before defendant's original sentencing, the government provided evidence regarding the amount of drugs involved in the conspiracy, including certain amounts pertaining to defendant. (CR 398.) More specifically, the government proffered transcripts of wiretap calls, a declaration from LAPD Officer Mark Brooks regarding the interpretation of coded language used by the defendants as well as the seizures made during the investigation, and laboratory reports establishing the amount and type of narcotics seized. (For ease of reference, the relevant declarations, transcripts, and reports are attached as exhibits to this pleading.)

Although defendant refused to admit to the amount of cocaine that he sold to Jackson, the evidence shows beyond a reasonable doubt that on October 30, 2002, defendant sold 993 grams of powder cocaine, and on November 10, 2002, defendant sold one kilogram of powder cocaine.  In addition, on June 26, 2003, defendant knowingly possessed more than 5 kilograms of powder cocaine.  Furthermore, because defendant was personally involved with each of these events, the amounts of powder cocaine were known and reasonably foreseeable to him.

### A. **Defendant sold 993 grams of cocaine on October 30, 2002.**

On October 30, 2002, as defendant admitted, he supplied Jackson with crack cocaine and powder cocaine.  At approximately 3:30 p.m. on October 30, 2002, Jackson called J. Edwards.  (Exh. A: Call 1-103, Brooks Decl. ¶ 5.)  During the conversation, Jackson told J. Edwards, "I'm on my way to your house.  I'm on La Brea."  J. Edwards asked, "So, um, he gave us some extra ones?"  Jackson stated that Lococo "cooked a cookie" (converted cocaine powder into an ounce of crack cocaine), and "He gave me a cookie.  He was just cookin' it."  J. Edwards said "let me have half that cookie or somethin'."  Jackson responded, "Alright."  J. Edwards told Jackson he was pulling up to the house, and Jackson said she was right behind him.

On October 30, 2002, the Redondo Beach Police Department served a state search warrant at J. Edwards' residence.  (Exh. A: Brooks Decl. ¶ 5.)  During the search, officers seized, among other items, cocaine powder, crack cocaine, and approximately $14,000 cash.  Subsequent fingerprint analysis of the kilogram of

4

powder cocaine found Lococo's fingerprints on the wrapping materials. The Drug Enforcement Administration ("DEA") laboratory subsequently analyzed the cocaine powder and found it had a net weight of 993 grams. (Exh. B: Bates 4033.)

On November 3, 2002, during a conversation with Tawana Edwards, Jackson said that she had just seen him "in there" (referring to J. Edwards, who was in custody after his arrest by the Redondo Beach Police Department). (Exh. A: Call 1-106; Brooks Decl. ¶ 5.) T. Edwards asked "How much money did they get?" Jackson responded "about . . . fourteen thousand." Jackson stated, "It was in the closet. That was off one of the birds, remember. I had just bought a bird, they found a whole bird (one kilogram of cocaine) and what was left off of the other bird, outside though."

### B.   **Defendant sold 1 kilogram of cocaine on November 10, 2002.**

On November 10, 2002, at approximately 1:30 p.m., Jackson received a call from J. Edwards. (Exh. A: Call 1-109; Brooks Decl. ¶ 7.) During the conversation, J. Edwards stated, "You need to see what's happen with Big Man (Lococo)." J. Edwards asked, "What color?" Jackson replied that it was "a beige white." J. Edwards stated, "Well, you tell the motherfucker the situation, and what, what's the best deal." Jackson agreed, and J. Edwards told her to call him back.

On November 10, 2002, at approximately 1:33 p.m., Jackson called Lococo and told him, "Alright. He (J. Edwards) want another one (kilogram of cocaine powder). He said could you give him a deal?" (Exh. A: Call 1-110; Brooks Decl. ¶ 7.) Lococo

5

stated, "That's about the only thing I can do though."  Jackson added, "His (J. Edwards') bail and all that.  He's just trying to get back on his feet."  Lococo stated, "It's forty-six ($14,600), right?"  Jackson stated, "No. You gave him fourteen-five ($14,500) remember?"  Lococo said that was the lowest he could go.  Jackson asked, "You can't do it no fourteen-four ($14,400)?"  Lococo said, "I got to give you your thing too (money for setting up the deal)."  Jackson said, "Yeah, I feel you.  Alright, I'm going to call him and tell him that you doing it the lowest," then she would call Lococo back.

After Jackson hung up with Lococo, she called J. Edwards. (Exh. A: Call 1-112; Brooks Decl. ¶ 7.)  During the conversation, Jackson said "I told him (Lococo) about you and he say that's the lowest he can go."  J. Edwards asked, "What?  What he say?"  Jackson replied, "Fourteen-five ($14,500)."  J. Edwards said alright and he would call her later.  After Jackson hung up with J. Edwards, she called Lococo to confirm that they wanted to do the transaction that day.  (Exh. A: Call 1-111; Brooks Decl. ¶ 7.)  She told Lococo that she would be sending her daughter there.  The price that Lococo charged Jackson and Edwards, $14,500, is consistent with the market price at that time for one kilogram of powder cocaine.  (Exh. A: Brooks Decl. ¶ 7.)

    C.    **Defendant possessed more then 5 kilograms of cocaine on June 26, 2003.**

On June 26, 2003, defendant was found inside the residence at 1307 East 43rd Place, Los Angeles, California, and was placed under arrest pursuant to a federal arrest warrant.  (Exh. C.) FBI agents then executed a federal search warrant at the

6

location. (Id.)  After a trained narcotic dog alerted to a file cabinet in the living room, agents discovered five brick-size packages and two plastics baggies of a substance later confirmed to be powder cocaine. (Id.; Exh. B: Bates 4188, 4189, 4191.) Subsequent testing by the DEA laboratory indicated that the total weight of powder cocaine was greater than five kilograms.[4] (Exh. B: Bates 4188, 4189, 4191.) After waiving his Miranda rights, Lococo admitted that he had five kilograms of cocaine at his residence and that he had paid $13,800 per kilogram. (Exh. C.)

## V. REQUESTED SENTENCE

Although the Ninth Circuit vacated Lococo's sentence due to its finding of an Apprendi error in the Court's finding of the amount of crack cocaine involved in the conspiracy, the Ninth Circuit instructed that on remand, in order to justify a section 841(b)(1)(B) enhancement, the Court should make a finding as to the amount of powder cocaine involved in the conspiracy. On remand, the Court should find that the 841(b)(1)(B) enhancement properly applies to Lococo's sentence.

As explained above, defendant expressly admitted his involvement with powder cocaine on three occasions during the course of the conspiracy: two sales of powder cocaine and one instance of knowingly possession of powder cocaine. The evidence shows beyond a reasonable doubt that defendant twice sold

---

[4] As reflected by the summary chart attached to the Rosenberg Declaration, the following drug exhibit numbers identify the powder cocaine amounts seized from Lococo's residence on June 26, 2003: #144 (995.2 grams), #146 (249.5 grams), #140 (996.9 grams), #141 (996.9 grams), #142 (999.9 grams), and #139 (1002 grams). This results in a powder cocaine total weight of 5,247.5 grams.

7

1 approximately one kilogram of powder cocaine and possessed more
2 than five kilograms of powder cocaine.  These amounts undoubtedly
3 support a finding that the Lococo was knowingly involved in a
4 conspiracy to posses with intent to distribute, and to
5 distribute, more than 500 grams of cocaine.  The result of such a
6 finding is to increase defendant's maximum sentence to 40 years
7 pursuant to section 841(b)(1)(B).  With a statutory maximum of 40
8 years, the Court may reimpose its original sentence of 262
9 months.[5]

## VI.  CONCLUSION

Based on the evidence before the Court, the government respectfully requests that the Court find that the conspiracy in case CR 03-689 involved more than 7 kilograms of powder cocaine, an amount fully and reasonably foreseeable to defendant Lococo, and therefore a section 841(b)(1)(B) enhancement applies to Lococo.  Furthermore, since the statutory maximum sentence is forty years imprisonment, the Court's original sentence should be reimposed.

---

[5] The section 841(b)(1)(B) enhancement affects only the statutory maximum and minimum, not the calculation of the advisory sentencing guidelines.  Previously, the government and the court found an advisory guideline range of 262 to 327 months.  The government continues to calculate defendant's base offense level based upon a total quantity of 6595.05 grams crack cocaine, which still results in an adjusted offense level of 36 and a range of 262 to 327 months.

8